Case 22-5328, United States of America v. Joseph Zakhari. Argument not to exceed 15 minutes per side. Mr. Mazzoli, you may proceed for the appellant when ready. Your Honors, good morning. My name is Mike Mazzoli. I am representing the defendant appellant Joseph Zakhari. I'd like two minutes for rebuttal. Very well. Joseph Zakhari is serving a 15-year prison sentence right now on a case involving chat texts that he exchanged with a person who was in reality an adult male detective, but who was impersonating, if you will, a 15-year-old girl. He was convicted of that charge because the jury found, beyond a reasonable doubt, that he actually believed, when he was having these exchanges, that it was a 15-year-old girl that he was communicating with, as opposed to maybe an 18-year-old, which he had some reason to believe otherwise. The jury had the evidence to convict him on that charge because there was a video of Mr. Zakhari saying, I actually believed, but worse to the effect, I actually believed that she was 15. He said that in an interrogation and the jury, it is something the jury should never have seen because he said it after he invoked his right to counsel. I'd like to start with that issue right there, the clarity, the effectiveness with which he invoked his right to counsel, and then as... Can you talk about both your issues today? I will, with the court's permission. I'm hoping that the... That would be good. Okay. Very good. Well, with respect to the right to counsel, as the court knows, the Supreme Court asks for a statement of an intent to have an attorney self that's clear enough that the reasonable police officer can understand it. In our case, the words are just a few, and they came about two minutes into the interrogation. You can find them on page 30 of our principal brief. Mr. Zakhari has been told by that point of his Miranda rights and been told by the detective that if he wants to speak with an attorney, the questioning will stop. The detective has already also made clear to Mr. Zakhari that what he says in response to the detective could make all the difference in terms of what is going to happen to him going forward. Mr. Zakhari is being asked early on name, date of birth, social security number, and when that question comes up, Mr. Zakhari says, can I call my dad? The detective says, well, you know, I don't have your phone and I can't give it to you right now, Mr. Zakhari, but you said I can stop any time and call if I wanted to. I would point out that that's about the only point where Mr. Zakhari ever had the nerve to push back. The detective, yeah, well, is your dad an attorney, Mr. Zakhari? My sister's an attorney. The detective, do you want to call your sister, Mr. Zakhari? Yeah, I mean she, and then he pauses. The detective, if you want to, yes, but that's going to be the end of us talking. Now, the district court cited four reasons why it did not think that Mr. Zakhari spoke clearly enough for the reasonable person to I guess just before we get into all four, sort of a rubric perhaps, I mean just to be candid with you, the difficulty that I, speaking for myself, see that you have with this argument is the severity or the showing that's necessary. I mean, it's sort of a, to some extent maybe it's a gloss by later Supreme Court cases and certainly in our circuit, but it must be an unequivocal, clear invocation. Yes. And in a sentence that he doesn't finish, I'm struggling to see how it's so clear. I just say that, you know, just by way of the overall standard as you go forward with your discussion. Sure. Well, Your Honor, I would propose that he did not begin an affirmative answer. He made an affirmative answer. The police officer said, do you want to call your sister knowing that the sister is an attorney? Mr. Zakhari said, yeah. And critically, I think, instantly when the detective speaks up, he's saying, yeah, but if you do, that's the end of us talking. He understood perfectly because if the sister was not an attorney, it wouldn't have been the end of them talking. He understood perfectly. Now, I would say that it might not be said that as a matter of law, just saying, yeah, in an exchange like this is enough. I think it was. In this case, I think the district court's findings to the contrary, for instance, when she said he, the district court said that Mr. Zakhari stammered at the beginning of an affirmative answer as to whether he wanted to call his sister. No, he wasn't stammering and he didn't just begin to say, yeah. He said, yeah. Whose burden is it to show that there's been a proper waiver of your right to counsel? Is that the government's burden? Yes, it is the government's burden. After there's been an invocation, yes. Okay. So that's the framework and the question is whether, articulate the standard as you say, a statement that can reasonably be construed as an expression of a desire for the assistance of an attorney. What in your case qualifies that as a request for the assistance of attorney? Well, the exchange between the two, my sister's an attorney. Do you want to call your sister? Yeah. And then the detective immediately understood that the gravity of that was if you do, because she's an attorney, that's the end of us talking. In that respect, he was saying the right rule and he should have stopped with that. In fact, there should not be any pushback, any further question after the invocation if it's sufficient. Now, if it's not sufficient, then everything that follows, you know, I suppose there are other arguments that could be made. But if the invocation is sufficient that the police officer, a reasonable police officer would understand that there's been an expression of a desire to talk to an attorney, that's the bright line rule that the Supreme Court speaks about in Smith v. Illinois. And the Supreme Court has said more than once that this bright line rule applies because people are vulnerable in the presence of a police officer and you cannot expect them to have the composure to keep asking for an attorney. Once, if it's something a reasonable police officer would understand, once is enough. And what follows is, I would say, irrelevant. Because certainly he couldn't waive after he has invoked his right to counsel. He can't do it a minute later in that same context. There are circumstances where maybe a later waiver would be appropriate. There's a lot of discussion about the fact that the attorney requested is his sister. What is, is there any law that would govern that? And what difference would it make if the person requested is his sister? Well, I don't think it makes any difference at all, Your Honor. I don't think there's ever been a specific statement by a court to say, this is what happens if the person is asking to speak to a lawyer to whom he or she is related. Now, if he had only asked to speak to his sister and there had been no further discussion, the police officer would have had no reason to think that his sister was an attorney. I think that is necessary where you've got a potential where, as a reference, I want to call my sister. If he does not also say my sister is an attorney, then the police officer can't be expected to think that he's invoked his right to counsel. But once he has said, my sister is an attorney, then it becomes a meaningless existential question where you have a detective saying, well, you say, yeah, you want to talk to your sister, but I'm confused when you say, yeah, do you want to talk to her as your sister or do you want to talk to her as an attorney? To the extent there ever can be confusion about that, it's not here. And again, the detective understood immediately the gravity of what the... If we assume that there was an invocation of the right to counsel, does the text message evidence make that harmless error? No, it does not. Why not? Well, the text message evidence is equivocal, if you wish to use that word. There are many times when Mr. Zakari is challenging this person that he's communicating with, asking, are you sure you're not 18? What we were able to show is that he found this person that had the person there age 18. And that was age 18 and giving basically the e-mail address or chat address so that an interested person could communicate. Someone who was over 18 or 18 or over could communicate, but not younger people. Or should not be supposed to be 18 to be on that website. That's right. That's right. And almost the first thing he said, well, he did say at some point, are you sure you're not 18? So it's clear he had reason. He was saying he had reason. But after the video of the confession, it was impossible. Sure. I mean, it amounts to a confession on the element of crime. Yes. Yes, indeed. So it is highly consequential. Yes. I mean, my own concern is he doesn't even finish the sentence. And given the way the court has, I mean, the Supreme Court has couched the standard for better or worse, if you cut yourself off, I mean, he didn't get cut off. He stopped and thought more and then basically chose not to insist or complete the thought. I'm not trying to haggle about it. That's what gives me, myself, some significant pause on this point. Certainly. My only sub-proposal for thinking is under those circumstances, the intense pressure. A person who is frightened out of his wits, and that's clear from the video, just absolutely terrified that him being able to fight back after having asked once for an attorney, he was very weak. Is there any case law that says we kind of give him credit for that frailty, so to speak, that we sort of view this through this lens of he's sort of maxed out for how much he can assert himself? I think the Supreme Court's observation in Smith v. Illinois is critical because the Supreme Court, you can't expect a guy to, you have to demand that he makes a request for counsel clearly enough to be understood, but you can't expect him to be able to bear up under the pressure. That's why we have a bright line rule, because people change their, they give up. Can I ask, well, I don't want to truncate this discussion. I do want to ask a question or two about the vindictive prosecution. Is that? Certainly. So, I mean, the Goodwin case doesn't, to my, I mean, when I read that, it seems more like a discussion rather than something that gives us a very clear rule. I think our Ladeau case does give us a reasonably good rule, and so you're trying to show what you need to show in the district court in here is a realistic possibility of vindictiveness, correct? Yes. Is that a decision the court should make, looking only at the grounds you put forward? I mean, because the way, well, I mean, the way the court seems to lay this out is you kind of, you make your showing, and then if you make the requisite showing, the prosecution must come forward and rebut what is now a presumption. Yes. I mean, is it that two-step process? Because the district court seemed to kind of conflate it into one and defeat your first step based on stuff that would normally be rebuttal. Just, what's your thought on procedurally the way that should happen? Well, I have, I agree with you that Ladeau sets out a kind of a two-step directive for me then is the government required, but I think Ladeau does not exclude letting, or the district court evaluating what the government has to say in its own defense. So I don't think it's inappropriate for the district court to do that, and you are correct that she did not make a, well, I think she said basically that the evidence was not enough to raise the presumption. So why, I guess, why do you think the court was wrong, and what do you make of the rather cryptic comments in the sentencing proceeding when she seems to have some buyer's remorse with respect to that decision? Oh, I call it exactly buyer's remorse. It's obvious. I mean, how would you distill, how would you analyze this, you know, if you had this record in front of you? I think that there, of course, the question is both unreasonableness, was there unreasonable conduct, and did the prosecutor have a personal stake in it? The corroborated objective evidence was that this has all the badges, it meets all the different badges of vindictiveness. A new charge jacks up the mandatory minimum, it's not because there's been a failure of plea negotiation, things like that. These are sort of external, circumstantial indications of unreasonableness. And then for the stake, Ladeau speaks of the likelihood of vindictiveness as indexed to the burden that's been placed on the prosecution, and the burden we showed, demonstrated, was significant in our case, and also more than anything else the prosecutor had dealt with for the prior year. The only evidence, so there's this concrete evidence. I think if the prosecution had said nothing, the court would have said... What was the court's mistake? I mean, just in the time we have here to distill it. The mistake is that a court is supposed to, in exercising its discretion, render a judgment based upon the weighing of all the relevant factors. I think the court failed to weigh the relevant factors because the court did not have enough evidence from the government. More was available, could easily have been gotten. The prosecutor actually in her response said, my boss checked on this, my boss above that boss, my U.S. attorney, all are in agreement. The court could have used that as an invitation to say, well, let me hear from them too, just so we're sure, because all of the objective evidence suggests otherwise. That's what the court should have done. The court, let's say, ruled prematurely and for that reason abused its discretion, because there was better evidence to be had and the court never asked for it. Okay, thank you. Any further? Okay, thank you. You'll have your rebuttal. We'll hear from the government. May it please the court, Terry Cushing for the United States. Your Honor, I'm going to go start with suppression, unless you want me to start somewhere else. This was an equivocal and unclear statement. He said, yeah, I mean, and he didn't just stop, he trailed off and hung his head. The defense in their briefs went to speculate what he might have been going to say after the I mean. Well, he didn't have much opportunity to say much, did he? I mean, isn't there like a four-second delay before the detective then begins questioning? Oh, it was a palpable delay, Your Honor. He had plenty of time to say whatever he wanted. The detective waited and then he started to ask, and he started to advise him again. I agree. There was a delay, the sort of delay that we see throughout the entire investigation or interrogation where he just hangs his head in shame. I mean, it's clear throughout the whole thing, but what I'm asking you is, have you looked at how long the interrogating detective waited before then beginning again to ask questions? I may be wrong, but my look is that it's like four seconds. Your Honor, I did not time it. I did look at, I did obviously watch the video, but I didn't time the delay, but it was a palpable delay. Well, doesn't that make, doesn't it make a difference whether he has an opportunity to say anything else if he wants to, if he's already said in response to the request, do you want to, do you want your sister, do you want an attorney? My sister's an attorney, do you want to call your sister? Yeah. No, it wasn't just yeah, Your Honor. I'd have to... Yeah, I mean that. And then he stopped and... So then the question becomes, if applying the standards that the court uses, isn't that a point at which there should be a pause in the interrogation, in fact, rather than an immediate return to questioning? No, Your Honor. In fact, the case law is very clear that when a defendant says something that is unclear and equivocal, the interrogator has no obligation to stop at all. He can continue to question along the same lines he was. What is unclear about yeah? I mean... Nothing would be unclear if that's what he said. If he had said yeah, and then Detective Hedden had continued into him with questions, then yes, we'd have had a suppression at the district court. But that's not what happened here. He said yeah, I mean, and trailed off. I mean what? That is ambiguous. Why do we have to speculate what he might have said in that after I mean? Because it was unclear. Why isn't this like Abella versus Martin, where we said that maybe I should talk to an attorney was an invocation of the right to counsel because the defendant identified a specific attorney. Don't we have that exact situation here? We know who he wants to call. It's his sister. And why is it yeah, I mean that, not any distinction from maybe I should talk to an attorney? Because he did have that specific name. He did have the maybe I should talk to Bob Evans or whatever the name was and handed him a business card. Here, when Zakari wanted to talk to his father and we can't divorce him. So this is a guy who's being interrogated and he's saying I don't know what to do. Should I tell my family? He's walking through his kind of thought processes. And so are you saying that we have a different standard if the person that you asked to be your counsel in this situation is in fact a relative? Not at all. It depends on the context. If in the context he had said my sister's an attorney and I want to call her, that again, we'd have been suppressed at the district court. Actually, we would never even have gone forward with the evidence. We would have said no, we don't have a good statement here. But we don't have that. We have... I'm sure that it's before saying that he says, but you said I can stop at any time and call if I wanted to. At that point, he was talking about calling his father. He does not have a constitutional right to call his father. Now, could that have been... Immediately after that, the detective says, yeah, well, is your dad an attorney? My sister's an attorney. Correct. That's what he said. That's right. So he's indicated that he'd like to stop and then it's, okay, do you want to call your sister? Yeah. I mean, she... I mean, the yeah is there. The yeah is there, but it's in a context. It's followed by I mean and a trailing off. It's in a... The context is that it was the detective who asked, is this father an attorney? Because he doesn't have a right to call family. He answers that his sister is. Yes. And that's when the detective said, well, do you want to call your sister? So he's trying to... He's doing what he doesn't have to do. He's trying to clarify what is this man talking about? Because it's unclear. There'd be no reason to clarify if it wasn't unclear. And he says, yeah, well... He doesn't say well. He says, yeah, I mean... I mean, I'm sorry. I'm struggling with how that satisfies the requirement of the Supreme Court to have a bright line rule. It seems to me that the rule cannot vary in any respects simply because it's a family member. The gloss that we're talking about family, I'm sorry, how that negates a bright line rule, particularly in an interrogation situation where someone who's said, I'm not frankly not sure whether it's earlier or later, I don't know what to do. I need somebody to tell me. I don't know my rights. I need legal guidance, has said this. And so when the guidance is someone, I don't know who to call. I don't know attorneys in Louisville. And so because he is asking for his sister, which seems to be a pretty logical response, I don't know anybody here, but I know my sister's an attorney. I don't think we can necessarily ascribe that relationship as being one of the key determinants because it seems to me to undercut the bright line nature of this rule. Let me try to unpack your question, Judge, because there was a lot in there. There's a lot there. There was a lot in there. First of all, there is a bright line rule. If a suspect invokes counsel, questioning stops. There's also a bright line rule that because that first bright line rule is so absolute, we stop. The other bright line rule is that the invocation must be clear and unequivocal. We have many cases where people even use the term attorney. The Omawi case I think is one of the best ones we can look at here, where the person actually says, I think I want to do that. Is there an attorney on board? And he was talking about invoking his right to silence. That's not an issue here either. Zakari has not raised that he invoked his right to silence, which would go more to what your question was earlier. So we have those two bright line rules, and because we have to be sure that this was clear and unequivocal, because of the extreme nature of the first bright line rule, the questioning must stop, we have to look at the context, we have to look at what a reasonable law enforcement person in this situation would have understood. Here we've got a context where he had talked about his sister without mentioning that she was an attorney. He didn't say she was an attorney when he first mentioned her. Well, it starts with the dad. Exactly. And it ends with the dad. My own, it's not really adverse to your position, but one has to determine which capacity. Are you talking to somebody for emotional support? Because he starts with his dad, and the detective brings up attorney, and he answers the detective's question. But, you know, there is a question about in which capacity do you want to talk to somebody. Exactly. There's your... But, you know, he does say yeah. Yeah, I mean, there's your lack of clarity right there. And the detective here, contrary to what my colleague on the other side argues, he testified at the suppression hearing that he did not understand that as an invocation of the right to counsel. And he did more than he needed to do in trying to clarify, and he wanted to make sure he understood that questioning will stop if what you're doing is asking for an attorney here. And early on, he did not say anything about legal advice. Never said anything about legal advice in Louisville. Can I interrupt you? Sure. Of course, you're the judge. No, not at all. There's two people. About the vindictive prosecution issue, I mean, the law in this area is not the simplest to make out. But in Ladeau, the court says that there was this realistic possibility of vindictiveness for two reasons. Number one, there had not been any kind of new knowledge or change of circumstances between indictment number one and indictment number two. Now that, on this record, seems to be the case. It is the case, but... I appreciate your straight answers. Under Goodwin, that's irrelevant. Why is it irrelevant? Well, I mean, it's irrelevant before a person shows a presumption, raises the presumption. It's part of getting to the presumption. It's like you just added a charge. You haven't learned anything new. And six months later, after a bunch of intensive motion practice, you add a charge that takes it not only from 10 for this 24-hour chat exchange, but 15 years, mandatory minimum, for this person. I mean, that's a very consequential change, which looking at the docket or the record, one doesn't really see any new insight. I'm not trying to contend on this point right now, but just about the standard, Ladeau says, all right, nothing had changed. And number two, that the motion to suppress in that case, it inflicted a mortal blow. And that goes to this stake issue, which... Exactly, Judge. Okay, but let me just kind of put a finer point on it, and then you can respond. So the stake thing, I don't really understand what stake we're talking about after the government has already lost a motion. What stake is left? It seems to me that the court is on this point, they're saying you can't do two things. You can't punish somebody for sort of lawfully defending themselves in court. Neither can you try to deter them from asserting constitutional rights, like a motion to suppress in court. And so there, Ladeau says, on the inflicted a mortal blow, it seems to me the difference between that case and this one is that here the motion threatened a mortal blow, and there have been four other contested motions going on. And so I guess my question is, it seems to me that's the difference between this case and Ladeau. Inflicted and threatened, and why doesn't the deterrent aspect, which I think is still present when this thing's looming, you better knock it off, you know? Maybe you better cut a deal. Why isn't that deterrent aspect fully present in this case to at least sort of meet the first step, and then you have to come forward in earnest, show that it wasn't vindictive? Sorry for the long question. I'm not trying to be compound, so that distinction, why do you win because of that distinction? Because losing the suppression motion and completely destroying the case on the count that was there is very similar to losing on appeal and having to come back and litigate. It is, but why is that the only circumstance where it can be vindictive? Why can't it be, I mean the court does talk about deterrence, right? And you can still deter before you counter Goodwin. If that's crosswise, tell me how, because I don't want to make a mistake. Because Goodwin says that motion practice is common in criminal cases, and we can't assume a bad motive on the part of the prosecutor for superseding an indictment. We have to limit our time, can I answer that? Motions practice in itself simply does not raise the presumption. Isn't there a question about the quantity of motion practice? So you would say you can file 50 motions before and we don't get to consider that as generating a part of our consideration for what might generate a vindictive response? No Judge, not at all, because if you made that rule, do you know what's going to happen in every criminal case? Defense attorneys are going to file motions as fast as they can and as many as they can to prevent the prosecutor from ever superseding an indictment. But, I mean, it can't just be that motions practice itself is never a ground for a finding of vindictiveness, because in Ladeau, they filed the exact same motion that the defendant filed here. Exactly, and the difference... The only difference is it's still pending. That's the huge difference. That's all the difference, because Goodwin makes a very strong point that return from an appeal when you've lost something and you have to do something about it, that is a situation where we can presume vindictiveness. Motions practice of that case. I mean, seriously, they didn't say only in this situation. That happened to be the facts there. We have different facts, but they talk about a deterrent, invalid or improper deterrent motive to asserting one's rights, and that, so why isn't this a deterrence case? Maybe it's the first one, you know? Too simple, but because the Supreme Court said so. Where do they say deterrence is not, I mean, trying to deter a defendant from exercising his constitutional rights, where do they say that that is not a ground on which a district court might find vindictiveness? They do not, but they say that the mere filing of motions and a superseding indictment comes after that, cannot raise the presumption. There has to be... Liddell was the same motion. It was, but it was in a completely different context. It was a completely different point in time. Just because it was granted. Absolutely. But I guess, I mean, okay, I mean, I'm not trying to give you a hard time. I really appreciate your straightforward, you know, answering the question. That's the question here, though, you know? I mean, does this own, so what stake is left after the government's already been wiped out? At that point, it's just pure spite, you know? And it's like the judge sentencing somebody to a higher sentence after he got reversed. I mean, that's just pure spite. He doesn't have a stake. The government doesn't have a stake after all their evidence has just gotten blown up. It's just, you know, I'm going to get you back whatever way I can. There's not really a stake there. Here, there is a stake. It's like this thing is looming. Obviously, from the discussion today, it would appear to have been a quite serious motion. Why isn't that a stake? Again, because that's in the pretrial stage. That is something that happens in every criminal case. That's, you know, you've got to separate somehow. Well, exactly. And the somehow is because in Ladeau, the motion was granted. Okay. And the prosecutor lost all of his evidence. And Ladeau came up on an appeal from the United States. So the question was, did the district judge abuse his discretion in that case? The fact that he didn't abuse his discretion in that more extreme situation we have here doesn't say that the judge here abused her discretion. Court kind of seemed to think that she was constrained almost as a matter of law. Maybe for the reason you said. And I'm just wondering if that's a right reason. She's right. But the comments at sentencing, if that's what you're referring to. She didn't seem too happy about it then. She didn't. But if she didn't seem happy with the mandatory minimum she had to follow. She said she had real pause about the vindictiveness thing after what happened at trial. She didn't specify. Right. But if she had changed her mind, it wasn't too late to just miscount three. She could have just miscounted three right then. And sentenced him to 10 years on the mandatory minimum on the previous charges. Okay. So we still have serious mandatory minimums here. Whether it's 10 or 15, obviously 15 is more to a defendant. A lot of time for a 24 hour chat thing. But it's not too much time for someone. By any means, but it's a heck of a lot of time. But it's not too much time for a person who is seeking to have sex with a 15 year old girl. And he believes she was a 15 year old girl. It was. Court thought it was too much time. District court thought it was too much time. She said it was more than sufficient. Well, everybody, we can all disagree or agree or disagree. Congress made that decision. Exactly. The Congress. Congress is the sentencing judge on that one. That's where I was going, Judge. Any. That's all right. Any questions? Thank you. All right, sir. Appreciate your answers. And we'll hear rebuttal. Your honors, I would say you've already been very generous with me in terms of time. I've already taken up probably more than the two minutes I've asked for. I would be happy to ask or allow the court to direct me. And if the court has no direction as to what sort of rebuttal it would like to hear, I would be glad to rest my argument. Anybody? All right, sir. I think we're good.  We do appreciate them. The case will be submitted. And the clerk may call the next case.